IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SUBSTATION K, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:19-cv-00031-SRB |
| | ) |
| KANSAS CITY POWER & LIGHT COMPANY, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Before this Court is Defendant Kansas City Power & Light Company's Motion for Summary Judgment. (Doc. #73). For the reasons discussed below, the motion is DENIED.

**I.   Legal Standard**

Federal Rule of Civil Procedure 56(a) requires a court to grant a motion for summary judgment if 1) the moving party "shows that there is no genuine dispute of material fact" and 2) the moving party is "entitled to judgment as a matter of law." A nonmoving party survives a summary judgment motion if the evidence, viewed in the light most favorable to the nonmoving party, is "such that a reasonable jury could return a verdict for the nonmoving party." *Stuart C. Irby Co. v. Tipton*, 796 F.3d 918, 922 (8th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). While a plaintiff opposing summary judgment "may not simply point to allegations in the complaint," *Robbins v. Becker*, 794 F.3d 988, 993 (8th Cir. 2015) (internal citation and quotation marks omitted), the "standard for avoiding summary judgment" is "relatively lenient." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 479–80 (2013) (citing *Anderson*, 477 U.S. at 248). The purpose of summary judgment "is not to cut litigants off from their right of trial by jury if they really have issues to try." *Hughes v. Am.*

*Jawa, Ltd.*, 529 F.2d 21, 23 (8th Cir. 1976) (internal quotation marks omitted) (quoting *Poller v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464, 467 (1962)).

## II. Background

Plaintiff Substation K seeks to hold Defendant KCP&L liable for the investigation and cleanup of polychlorinated biphenyls ("PCBs") and other constituents detected on Substation K's Property (the "Property"), which was formerly owned by KCP&L. Specifically, Substation K brings claims for injunctive relief pursuant to the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2619(a)(1); injunctive relief pursuant to the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(A); abatement of imminent and substantial endangerment pursuant to the RCRA, 42 U.S.C. § 6972(a)(1)(B); and cost recovery pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a)(4)(B). KCP&L maintains that it is not liable for the PCBs on the Property, offers a plethora of alternatives as to the origin(s) of the PCBs, and seeks to hold Substation K liable for response costs associated with the PCBs. Specifically, KCP&L brings counterclaims for cost recovery and contribution under CERCLA, 42 U.S.C. §§ 9607(a)(4)(B) and 9613(f). Considering the parties' statements of fact and supporting evidence in the light most favorable to Substation K, Inc. as the non-moving party, the Court finds the relevant facts to be as follows:

The Property, located in Kansas City, Missouri, was built in approximately 1911. KCP&L owned the Property at that time. The original electrical equipment installed at the Property, including transformers and a rotary converter, did not contain PCBs. Metropolitan Street Railway Company ran a streetcar substation at the Property and owned and operated the electrical equipment. The parties dispute where on the Property the electrical equipment was located.

PCB fluids were first patented for use as a fireproof dielectric fluid in electrical equipment in the 1930s and 1940s. The streetcar facility closed before 1946. KCP&L sold the Property to a printing company in 1959. Whether the original transformers installed at the Property were replaced with PCB-containing transformers during KCP&L's ownership of the Property is disputed. Printing companies operated at the Property for approximately twenty years. Further, the concrete floor in the building at the Property was painted after KCP&L's ownership. Whether the type of PCBs detected at the Property is the same type that was used in the printing presses, printing ink, and/or paint used on the Property is another point of contention.

In approximately 1980, a hydraulic lift was affixed to the outside of the Property. The hydraulic equipment that powers the lift is located in the basement of the building. Substation K purchased the Property in 1996 and has continued to operate the lift equipment, which leaked at some point in time not made clear by the record. Samples collected from near the hydraulic lift detected PCBs, and KCP&L's expert observed hydraulic oil stains on the basement floor around the hydraulic system. The parties dispute whether the type of PCBs detected at the Property were used in the hydraulic lift equipment.

### III. Discussion

KCP&L argues Substation K's claims fail because they lack evidentiary support.[1] More specifically, KCP&L argues Substation K lacks evidence to establish that 1) PCBs were used or released during KCP&L's ownership of the Property; 2) KCP&L operated the equipment at the Property or discharged any solid and hazardous waste; and 3) the existence of an imminent and

---

[1] KCP&L also argues summary judgment is warranted on Substation K's claims because Substation K failed to offer admissible expert testimony. The Court previously ruled that Substation K's expert testimony is admissible. Therefore, the Court will not address this argument.

3

substantial endangerment to health or the environment.[2] KCP&L also argues summary judgment is warranted on its counterclaims because Substation K is a potentially responsible party ("PRP") as defined by CERCLA. The Court will address each argument in turn.

**A. Use or Release of PCBs During KCP&L's Ownership of the Property**

KCP&L argues Substation K lacks evidence required to succeed on its claims under RCRA, TSCA, and CERCLA showing that PCBs and other constituents were used or released during KCP&L's ownership of the Property. Substation K maintains that it has put forth sufficient evidence. The Court recognizes that both parties rely on expert testimony to establish the origin of the PCBs and the time period during which the PCBs were used or released. The Court's job at this stage is not to balance the evidence or weigh the expert testimony. *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003) (citing *Anderson*, 477 U.S. at 255) ("In ruling on a motion for summary judgment a court must not weigh evidence or make credibility determinations.").

Substation K's evidence indicates that Aroclor 1260 and chlorobenzenes, which were widely used in transformers such as the one installed and operated on the Property during KCP&L's ownership, were detected in soil samples and groundwater on the east side of the building where Substation K alleges the electrical equipment was located. Transformers containing Aroclor 1260 and chlorobenzenes were manufactured in the United States between 1929 and 1978, a time period which corresponds with KCP&L's ownership of the Property. Substation K also presents evidence refuting KCP&L's position that the PCBs originated outside

---

[2] KCP&L argues for the first time in its reply brief that Substation K "has not come forward with any evidence that it has incurred costs that were necessary and consistent with the CERCLA National Contingency Plan ("NCP"), a required element of Plaintiff's CERCLA claim." (Doc. #81, p. 6). Because the argument is raised for the first time in KCP&L's reply brief, the Court need not consider it. *See Jones v. Aetna Life Ins. Co.*, 856 F.3d 541, 549 (8th Cir. 2017) (The "court generally does not consider arguments raised for the first time in a reply brief[.]").

4

of the time KCP&L owned the property and from equipment other than the electrical equipment that operated the streetcar substation. Viewing the evidence in the light most favorable to Substation K and construing all reasonable inferences in its favor, the Court finds Substation K has presented sufficient evidence to withstand summary judgment on this point.

### B. Ownership and Operation of Electrical Equipment at the Property

KCP&L argues Substation K cannot prove its RCRA or TSCA claims because KCP&L did not own or operate the electrical equipment that allegedly released PCBs at the Property. Substation K argues, albeit imprecisely, that KCP&L's ownership of the Property and the installation and operation of electrical equipment at the Property during KCP&L's ownership is enough to subject KCP&L to liability under the RCRA and TSCA.

#### i. RCRA Citizen Suit

Section 6972(a)(1)(A) of the RCRA permits a person to commence an action against any person "who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter[.]" Under the plain language of the statute, a person may be liable if it is "in violation of any . . . regulation." *Id.* KCP&L cites no law supporting its position that it cannot be "in violation" under the RCRA because it did not own or operate the electrical equipment that allegedly released PCBs even though it owned the Property at which the electrical equipment was installed and operated.[3]

---

[3] KCP&L cites *Goldfarb v. Mayor and City Council of Baltimore*, 791 F.3d 500, 513 (4th Cir. 2015) for the proposition that "Section 6972(a)(1)(A) requires evidence of 'defendant's *conduct* that is causing a *violation*' of the statute." (Doc. #74, p. 18) (quoting *Goldfarb*, 792 F.3d at 513) (emphasis in original). This quote is taken out of context. The court in *Goldfarb* used the quoted language to clarify that the "'to be in violation of' language does not necessarily require that a defendant be currently engaged in the activity causing the continuous or ongoing violation." *Id.* (emphasis added). The contemporaneity of KCP&L's conduct is not an issue before the Court.

5

Case 4:19-cv-00031-SRB   Document 84   Filed 06/05/20   Page 5 of 10

Based on the undisputed record, the streetcar substation operated under KCP&L's ownership of the Property for roughly 35 years. There is also an approximately 13-year gap between 1946, when the streetcar facility closed, and 1959, when KCP&L sold the Property. These facts cut against KCP&L's argument that it cannot be liable for the alleged release of PCBs from the electrical equipment that was installed and operated on its Property. Accordingly, the Court finds questions of material fact remain and KCP&L is not entitled to judgment as a matter of law on this point.

### ii. RCRA Abatement of Imminent and Substantial Endangerment

Section 6972(a)(1)(B) permits suit against any "past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment[.]" KCP&L argues it cannot be liable under §6972(a)(1)(B) because it did not itself use or dispose of any hazardous or solid waste at the Property. While there is no binding precedent on this issue nor caselaw directly on point with the facts in the instant action, courts in other circuits have found under various circumstances that parties' passive inaction or ownership of property served as grounds for liability for contributing to contamination. *See, e.g., Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 204 F.Supp.2d 804, 810 (D.N.J. 2002), *rev'd in part on separate grounds*, 215 F.Supp.2d 482 (D.N.J. 2002) (quoting *U.S. v. Price*, 523 F. Supp. 1055, 1071 (D.N.J. 1981), *aff'd*, 688 F.2d 204 (3d Cir. 1982)); *United States v. Valentine*, 885 F. Supp. 1506, 1512 (D. Wyo. 1995), *as amended* (Apr. 25, 1995); *Zands v. Nelson*, 797 F. Supp. 805, 810 (S.D. Cal. 1992); *Voggenthaler v. Maryland Square, LLC*, No. 2:08-CV-1618-RCJ-GWF, 2010 WL 2947296, at

*8 (D. Nev. July 22, 2010), *rev'd and remanded on separate grounds*, 724 F.3d 1050 (9th Cir. 2013). The Court also reiterates that KCP&L's position ignores that the streetcar substation operated on KCP&L's Property for roughly 35 years and that KCP&L maintained ownership of the Property for approximately thirteen years after the streetcar facility closed. This Court thus concludes that there remains a question of fact as to whether KCP&L contributed to the past handling, storage, treatment, transportation, or disposal of the PCBs at the Property. Therefore, summary judgment on this point is unwarranted.

### iii. TSCA Citizen Suit

Section 15 U.S.C. § 2619(a)(1) of the TSCA permits an action against any person allegedly in violation of federal regulations that establish a comprehensive framework for the handling, storage, and disposal of PCBs. KCP&L cites to no law that would suggest it is foreclosed from liability under the TSCA on the grounds that it did not own or operate the electrical equipment during the time of the streetcar's operation. For the same reasons discussed above, the Court finds that questions of fact remain as to whether KCP&L is liable under the TSCA. Accordingly, KCP&L's motion for summary judgment on this point is denied.

### C. Existence of an Imminent and Substantial Endangerment

KCP&L argues Substation K cannot establish that conditions at the Property may pose an imminent and substantial endangerment to health or the environment as required for liability under the RCRA. Substation K argues evidence that the PCBs and other constituents at the Property significantly exceed federal and state regulatory guidelines is sufficient to demonstrate the possibility of an imminent and substantial endangerment. "Whether a substantial and imminent danger exists is a question of fact." *Families for Asbestos Compliance, Testing & Safety v. City of St. Louis, Mo.*, No. 4:05-CV-719 (CEJ), 2008 WL 4279569, at *29 (E.D. Mo.

Sept. 15, 2008) (internal citation omitted). "Because hazardous substances are, by definition, capable of causing serious harm, a substantial endangerment may exist whenever the circumstances of a release or threatened release of a hazardous substance are such that the environment or members of the public may become exposed to such substances and are therefore put at risk." *Id.* (internal citation and quotation marks omitted); *see also Craig Lyle Ltd. P'ship v. Land O'Lakes, Inc.*, 877 F. Supp. 476, 483 (D. Minn. 1995) ("Based on the presence of contaminants in the groundwater which exceed the recommended allowable limits, the court is unable to hold that the site currently presents no threat to the environment."). "[C]ompliance (or noncompliance) with federal or state environmental standards is a determinative factor in assessing whether a particular form of contamination presents the possibility of imminent and substantial endangerment." *Families*, 2008 WL 4279569, at *29 (quoting *Interfaith Cmty. Org. v. Honeywell Int'l., Inc.*, 188 F.Supp.2d 486, 503 (D.N.J. 2002)) (internal quotation marks omitted).

KCP&L does not dispute that the contaminants detected on the Property significantly exceed federal regulatory guidelines, nor does it dispute that the contaminants have released into the soil and groundwater at the Property. Moreover, KCP&L's contention that "[a]n imminent and substantial endangerment must be proven through expert testimony," (Doc. #74, p. 21) (citing *McEvoy v. IEI Barges Servs., Inc.*, 2009 WL 10700262, *12 (N.D. Ill. Sep. 11, 2009)), is misplaced. The court in *McEvoy* stated that "[t]he determination of *whether coal dust* constitutes an imminent and substantial endangerment is not a simple question for the trier of fact to decide, but rather requires []special expertise[.]" *Id.* at *11 (emphasis added). This case is not about coal dust. Further, the court in *McEvoy* granted summary judgment after excluding the testimony of the plaintiffs' expert witnesses not because the plaintiffs had no expert testimony

8

addressing the imminent and substantial endangerment element, but because plaintiffs had no remaining evidence at all addressing the element. *Id.* at n. 12. Accordingly, the Court finds KCP&L is not entitled to judgment as a matter of law, and KCP&L's motion for summary judgment on this point is denied.

### D. Substation K as a PRP

Finally, KCP&L argues it is entitled to summary judgment on its counterclaims for cost recovery and contribution under CERCLA because Substation K is a PRP due to its ownership and operation of the leaking hydraulic equipment at the Property. Substation K argues generally that the evidence demonstrates it is not liable for response costs. "[I]n order to prove liability, a plaintiff must show that a defendant is within one of the four classes of covered persons enumerated in subsections (1) through (4); that a release or threatened release from a facility has occurred; that the plaintiff incurred response costs as a result; and that the costs were necessary and consistent with the national contingency plan." *Control Data Corp. v. S.C.S.C. Corp.*, 53 F.3d 930, 934 (8th Cir. 1995) (citing 42 U.S.C. § 9607); *United States v. Hercules*, *Inc.*, 247 F.3d 706, 715 (8th Cir. 2001). "Once liability is established, the focus shifts to allocation." *Control Data*, 53 F.3d at 934.

Contrary to KCP&L's assertion, Substation K's status as a PRP does not warrant it automatically subject to liability. As discussed throughout this Order, questions of material fact remain regarding the source and origin of the PCB contamination on the Property, and in turn, the Court cannot determine liability or allocate responsibility at this stage. Accordingly, summary judgment on KCP&L's counterclaims is not warranted.

9

IV. Conclusion

Accordingly, it is **ORDERED** that Defendant Kansas City Power & Light Company's Motion for Summary Judgment (Doc. #73) is DENIED.  The parties' Joint Motion to Extend Deadlines Under Scheduling Order (Doc. #83) is GRANTED.  The Court will contact the parties to arrange a conference call to reschedule the pretrial conference and trial dates.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough<br>STEPHEN R. BOUGH<br>UNITED STATES DISTRICT JUDGE

Dated: June 5, 2020